UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

REBECCA J. LEEPER,

             Plaintiff,

v.

CITY OF TACOMA, et al.,

             Defendant.

CASE NO. 3:20-CV-5467-BHS-DWC

REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Noting Date: June 25, 2021

The District Court referred this case to United States Magistrate Judge David W. Christel. This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Dkt. 31) and Defendants' Motion for Summary Judgment (Dkt. 33)[1].

---

[1] This motion was filed by counsel for Defendant, The City of Tacoma (the City), and joined by counsel for Defendant Tel C. Thompson (Defendant Thompson). Thus, while it purports to be a motion "on all claims," in fact the motion only addresses Plaintiff's claims against the City and/or both the City and Defendant Thompson. It does not address Plaintiff's claims of Assault & Battery (Claim 4) or Intentional Infliction of Emotional Distress (Claim 5) directed solely at Defendant Thompson. *See* Dkt. 1-1. Plaintiff's Complaint also lists "John Does 1-5." *Id*. Discovery in this case is complete and Plaintiff has failed to name or personally serve any "John Does." Her failure to perfect claims against them requires their dismissal from this case. *See Bradford v. City of Seattle*, 557 F.Supp.2d 1189, 1207 (W.D. Wash, April 4, 2008).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 1

## BACKGROUND

On April 13, 2020, Plaintiff filed a Complaint for Damages against multiple defendants including the City, Defendant Thompson, and city policy makers (John Does 1-5), in Pierce County Superior Court, for injuries she allegedly sustained in July 2018, when Defendant Thompson sexually assaulted her at work. Dkt. 1-1.

On May 19, 2020, the City removed Plaintiff's case to this Court. Dkt. 1.

Following a discovery dispute, on April 8, 2021, Plaintiff filed a Motion for Partial Summary Judgment, seeking an order that Defendants' affirmative defenses are legally deficient. Dkt. 31. The City filed a response in opposition (Dkt. 35), and Defendant Thompson filed a response joining in the City's response regarding failure to mitigate (Dkt. 37). Plaintiff filed a reply. Dkt. 38.

On April 12, 2021, the City of Tacoma and Defendant Thompson filed a joint Motion for Summary Judgment seeking judgment as to all of Plaintiff's claims against the City, and all but two of Plaintiff's claim against Defendant Thompson[2]. Dkt. 33. Plaintiff responded in opposition (Dkt. 41) and Defendants replied (Dkt. 45).

## STANDARD

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

---

[2] *See supra* note 1.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## DISCUSSION

The Court first addresses Defendants' Motion for Summary Judgment (Dkt. 33).

### I.     42 U.S.C. § 1983 (Claims 1 & 2)

Plaintiff's first claim for relief alleges that Defendant Thompson violated her Fourteenth Amendment rights when he intentionally, recklessly and/or with deliberate indifference, sexually assaulted her at her place of work when he jumped out from behind an office door, fondled her breasts while commenting on their size and admonishing another coworker to look at them, then displayed a picture of his penis on his phone and thrust his pelvis back and forth (the incident) Dkt. 1-1 at 4-5.

Her second claim for relief alleges that the City acted with deliberate indifference for Plaintiff's Constitutional rights by failing to promulgate, issue, and enforce appropriate procedures and regulations concerning its off-duty police officer security program, and because the City had actual knowledge of similar past complaints against Defendant Thompson but

deliberately continued to assign him "off duty" jobs such as the one he was performing at the time of the incident. Dkt. 1-1 at 5.

In order to state a claim for relief under 42 U.S.C. § 1983 (a 1983 claim), a plaintiff must show: (1) she suffered a violation of rights protected by the Constitution or created by federal statute, and, (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

The first step in a 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff satisfies this step by identifying her Fourteenth Amendment right to bodily integrity and privacy. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415–16 (9th Cir. 1992)("The right to bodily privacy [under the Fourteenth Amendment] was established in this circuit in 1963.").

To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants[3] acting under color of state law caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

    a. <u>Defendant Thompson was not acting under color of state law.</u>

Tuning first to the question whether Defendant Thompson was acting under color of state law, which Plaintiff must prove to sustain her 1983 claim against him, Plaintiff argues Defendant

---

[3] Municipalities are considered "persons" in this context. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). However, a municipality may only be liable if its policies are the "'moving force [behind] the constitutional violation.'" *City of Canton v. Harris,* 489 U.S. 378, 389 (1989) (quoting *Monell*, 436 U.S. at 694). In other words, Plaintiff must show that the municipality had a policy or official custom that permitted (or was indifferent to) the violation of her Constitutional rights. *See Monell*, 436 U.S. at 690-91; *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). Such a policy may be either "explicitly adopted" or "tacitly authorized." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986). Municipal liability can arise, however, only if "the decision to adopt that particular course of action is properly made by that government's authorized decision- makers." *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). Liability may also attach where there is evidence of a "widespread practice that . . . is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotations omitted).

Thompson was undoubtedly acting under color of state law at the time of the incident because he was in uniform, carrying his Tacoma Police Department (TPD) issued equipment, he was in a location not generally accessible to the public, and he was working an approved off-duty assignment. Dkt. 41 at 20-24.

Defendants disagree, arguing Plaintiff's focus on Defendant Thompson's appearance and location at the time of the incident is misplaced. Dkt. 33 at 15. Instead, according to Defendants, this Court should focus on Defendant Thompson's relationship with Plaintiff, which was characterized by overtly sexual exchanges and physical contact in the workplace, including sexually explicit text messages, telling each other they loved one another, hugging, and patting each other on the buttocks. Dkt. 34 at 13-15, 30-21, 29, 95-98, 114-138, 181. Just as Defendant Thompson was not acting under color of state law during the reciprocated exchanges with Plaintiff, Defendants argue that the incident similarly did not occur while Defendant Thompson was purporting to act in his official capacity as a police officer. Dkt. 45 at 11-12.

The Ninth Circuit has developed a three-part test for determining when a police officer, although not on duty, has acted under color of state law. The officer must have: (1) acted or pretended to act in the performance of his official duties; (2) invoked his status as a law enforcement officer with the purpose and effect of influencing the behavior of others; and, (3) engaged in conduct that "related in some meaningful way either to the officer's governmental status or to the performance of his duties." *Hyun Ju Park v. City & Cty. of Honolulu*, 952 F.3d 1136, 1140-41 (9th Cir. 2020).

"The essential inquiry [is] whether [the] actions related in some way to the performance of a police duty." *Gibson v. City of Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990). "The fact that a police officer is on or off duty, or in or out of uniform is not controlling. 'It is the nature of the

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 5

act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.'" *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975)(cited approvingly by Ninth Circuit in *Postma v. Waters*, 978 F.2d 1266, 1992 WL 323346, *2 (9th Cir. May 30, 1991)(unpublished)).

Plaintiff argues this case is akin to *Fontana v. Haskin*, 262 F.3d 871, 875 (9th Cir. 2001), where a fully uniformed California Highway Patrol Officer sat in the back seat of a patrol car with a woman he had arrested for suspicion of DUI, and inappropriately touched and sexually harassed her on the way to the jail. The court determined the officer had acted under color of state law because he exercised his authority as a police officer to effectuate the arrest and place her in the back of a police vehicle. *Id*.

Yet, in Plaintiff's case Defendant Thompson was not "on duty," and Plaintiff was not in custody. Even though Defendant Thompson was in uniform and equipped with his TPD-issued police tools, there is no allegation that he used any of this to facilitate touching Plaintiff, such as in *Lindsay v. Fryson*, No. 2:10-CV-02842-KJM, 2015 WL 2453157, at *2 (E.D. Cal. May 21, 2015), which is the other case Plaintiff urges this Court to follow. There, a Child Protective Services (CPS) officer purported to exercise her official authority when she attempted to extort the plaintiff. *Id at* *1. She showed the plaintiff her state-issued badge and told him she had discovered, in the course of her official job duties, allegations against him that she could make "disappear" in exchange for a sum of money. *Id*. at *2. The court determined that the CPS officer did act under color of state law because she committed the extortion under the pretense of her official duties. *Id*. Plaintiff does not connect the dots of her case to *Lindsay*, and this Court frankly does not see any relationship between Defendant Thompson's actions and his "government status" or the "performance of his duties." Dkt. 41 at 24.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 6

Instead, this Court finds the case at bar aligns more closely with the facts of *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838–39 (9th Cir. 1996), where the court held that an officer did not act under color of state law when he returned in a plain-clothes disguise to a house he had searched days prior while acting in his official capacity as a uniformed police officer, tortured the occupants to gain access to their safe, and robbed them. *Id*. at 839–40. In so doing the court emphasized that the officer was not in a uniform, did not identify himself as a policeman, and did not pretend to exercise his official responsibilities in any way. *Id*. at 838–40; *accord Almand v. DeKalb County*, 103 F.3d 1510, 1515 (9th Cir. 1997)(finding officer was not acting under color of law when he forced entry into an apartment and raped the occupant, even though he had just previously been in the apartment taking a police report).

Similarly, in *Watkins v. Oaklawn Jockey Club*, 183 F.2d 440, 443 (8th Cir. 1950), the court held that an off-duty deputy sheriff who worked as a security guard at a race track, although wearing official police garb, was not acting under color of state law when he ejected a patron because the deputy sheriff acted in the same manner that a civilian employee of the track would have acted. *See also Robinson v. Davis*, 447 F.2d 753, 759 (4th Cir. 1971) (citing *Watkins* favorably).

Also instructive is *Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006), where an off-duty, plain-clothed deputy was driving his own car when he was rear-ended. *Id*. at 1065-66. The deputy proceeded to pull the offending driver out of his car and beat him. *Id*. When bystanders tried to intervene, the deputy identified himself as a "cop" and ordered the bystanders to "stay back." *Id*. The court held that the deputy was acting under color of state law because he identified himself as an officer and used his official status to influence the behavior of the bystanders, thereby depriving the plaintiff of his constitutional rights. *Id*. at 1069.

In sum, this Court concurs with Defendants that there is no material question of fact whether Defendant Thompson was acting under color of state law during the incident. He was not exercising or purporting to exercise his official responsibilities, he did not identify himself as an officer, display his badge, or "specifically associate" his actions with his law enforcement duties, and he did not use his official status to deprive Plaintiff of her constitutional rights. Therefore, no reasonable juror could conclude that Defendant Thompson's actions related in any way to the performance of an essential police duty. Accordingly, Defendants' motion for summary judgment on the 1983 Claim against Defendant Thompson (Claim 1) should be granted.

      b. <u>The City did not have a custom or practice of ignoring complaints about Defendant Thompson.</u>

Assuming for the sake of argument that Plaintiff could prove Defendant Thompson was acting under color of state law, in order to prove her 1983 claim against the City she would also have to prove the City had an official custom or practice of ignoring Defendant Thompson's sexualized conduct, and a "direct causal link between [that] policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff argues the City was deliberately indifferent to Defendant Thompson's "long history of unlawfully abusive and harassing conduct." Dkt. 41 at 24. According to Plaintiff, the City repeatedly "swept under the rug" and/or failed to appropriately investigate complaints about Defendant Thompson. Dkt. 41 at 25-26. Plaintiff writes:

> Despite numerous officers within Thompson's own chain of command being made aware of the aforementioned inappropriate sexualized behaviors, and being dissatisfied with Thompson's conduct as a result, not one of them made any attempt to properly document the complaints, thoroughly investigate the allegations, or ensure that Thompson was held accountable for his actions pursuant to TPD policy. Instead, the officers within TPD's chain of command merely swept the allegations under the rug, justifying their coverup by claiming that no "formal" or "official"

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8

> complaint had been made, or that the inappropriate behavior did not occur while on-duty. Two telling examples of this practice were the TPD's response to learning that Thompson had posted nude photos online and that he had sent an unsolicited picture of his erect penis to a female colleague.
>
> Between June 2017 and December 2017, TPD leadership learned that Thompson had been posting nude photos online and on social media. After working its way through the department, TPD administration became aware of the situation and requested that Thompson have a sit-down meeting with his immediate supervisor, Sgt. Aaron Quinn, as well as Asst. Chief of Police, Ed Wade. During the meeting, Thompson was never even instructed to actually remove the photos, he was simply warned by Asst. Chief Wade about the concerning behavior, in what Sgt. Quinn described as a mere "talking to." According to Sgt. Quinn, if Quinn or Wade had instructed that the photos be removed, it would have likely necessitated documentation.
>
> Despite warning Thompson to be careful about posting such imagery online, and despite there being a concern over Thompson showing the photos to both teachers and students at Foss High School, no complaint was ever filed by any member of TPD regarding this incident. In fact, not even one document was created to memorialize the event whatsoever.
>
> Near or around that same time period, TPD administration also learned through the that [sic] Thompson had sent an unsolicited photo of his erect penis to a female TPD Animal Control Officer. In response, TPD Captain Shawn Stringer eventually contacted the female victim and asked for more information regarding what had transpired. According to Stringer, the victim did not want to file a formal complaint against her fellow officer. Stringer also claimed that the victim never stated that the behavior was "unwelcome," only that she did not wish to receive any more photos. Due to the fact it was not "illegal for two consenting adults to have that interaction," and because the text was not sent or received using a department issued cell phone, Stringer elected to not report Thompson for his behavior, again, sweeping the issue under the rug and intentionally avoiding the creation of a paper trail.

Dkt. 41 at 10-11 (footnotes omitted).

The City counters that most of the above constitutes inadmissible hearsay, in addition to a mischaracterization of evidence. Dkt. 45 at 2. For instance, the "nude photos" of Defendant Thompson and his wife are "artistic photos" currently on display on a photographer's Instagram page, and the City had no authority to demand Defendant Thompson remove them. *Id*. In addition, the nude photo sent directly to a female TPD Animal Control Officer was sent through

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 9

social media accounts during off-work hours, who did not complain about it. TPD Command Staff learned about the photo during the Internal Affairs investigations initiated by Plaintiff's complaint, by which point Defendant Thompson been placed on administrative leave. Dkt. 45 at 3. Prior to the that, Defendant Thompson only had one complaint against him, regarding his behavior while working "off duty" security at a high school prom (The Eatonville prom), which Defendants describe as follows:

> In her brief, [P]laintiff recites what she calls the "initial complaint" made by Washington State Patrol Trooper John Dittilo. Dkt. 41 at p. 12. The "complaint" that [P]laintiff cites, however, originates from multiple layers of hearsay, as Dittilo originally raised his concerns with TPD Officer Miller while at church. Miller documented what he understood Dittilo and the others to be saying and passed that information up the chain of command. An investigation was commenced and when the witnesses were interviewed by the investigating officer, none of the witnesses were able to offer concrete examples of inappropriate conduct by Thompson. Dkt. 34 p. 231-243. Without corroborating evidence of misconduct, the Department had no basis for sustaining the allegation. Moreover, although [P]laintiff complains that it took a month for the investigation to occur, there is no evidence in the record to establish that a month was an unreasonable period of time. Yotter Dec., Ex. 4. p. 1:12-20. Further, [P]laintiff's contention that the elapse of a month was a sufficient period of time to cause memories to fade, particularly the memory of an experienced law enforcement officer, is rank speculation.

Dkt. 45 at 3-4 (footnotes omitted). According to Defendants, this single complaint is not enough to create a material question of fact whether the City had a custom or practice of ignoring complaints about Defendant Thompson. Dkt 45 at 5.

This Court concurs with Defendant, and finds Plaintiff has not presented specific, significant probative evidence of an official policy or custom of the City ignoring complaints about Defendant Thompson. Plaintiff's "evidence" of rumors, unreported complaints, and speculation about the motives of others is inadmissible hearsay[5]. Fed. R. Evid. 801(c).

---

[5] Plaintiff's emphasis on the City's alleged failure to investigate rumors about Defendant Thompson's behavior is particularly troubling in light of the fact Plaintiff, herself, actively participated in inappropriate workplace conduct with Defendant Thompson for years, yet when she first complained to Sargent Roberts in

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

Moreover, Plaintiff fails to identify any "authorized decision makers" who allegedly endorsed this policy or custom, which is why her unnamed John Doe defendants must now be dismissed[6]. *See Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986)(holding municipal liability requires authorized decision makers adopt a particular course of action). She also fails to address the requirement that the City's putative policy or custom must be shown to have been the "moving force" behind Defendant Thompson's actions. *See e.g. Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694–95).

Finally, even if Plaintiff could establish the existence of prior unconstitutional conduct by Defendant Thompson that the City knew or should have known about, the mere existence of one or two incidents of unconstitutional conduct is insufficient to make out a "pattern and practice" or "policy and custom." *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996)(finding improper custom liability may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy); *see also Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1203 (W.D. Wash. 2008).

In sum, no question of material facts exists whether the City can be held liable for Plaintiff's 1983 claim (Claim 2), so Defendants' motion for summary judgment on this claim should be granted.

///

///

---

December 2017 about Defendant Thompson's inappropriate comments to others she did not file an official complaint or even mention Defendant Thompson's behavior toward her. Dkt. 34 at 58-62.

[6] *See supra* note 1.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11

## II. Negligent Hiring, Training and Supervision by the City (Claim 3)

Plaintiff's third claim for relief alleges the City breached its duty to use reasonable care in hiring, training and supervising its employees and agents, including Defendant Thompson. Dkt. 1-1 at 6. However, Plaintiff's arguments only address the theory of negligent supervision.

To prove negligent supervision plaintiff must show: (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and, (4) that the employer's failure to supervise was the proximate cause of plaintiff's injuries. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48-49, 51 (1997); *see also Betty Y. v. Al-Hellou*, 98 Wn. App.146, 148-49 (1999)(duty to supervise is limited to "prevent[ing] the tasks, premises, or instrumentalities entrusted to the employee from endangering others.").

Plaintiff argues that even if this Court determines Defendant Thompson was acting outside his scope of employment so that the City would not be vicariously liable under a respondeat superior theory (discussed below), the City is still liable for "negligently supervising and retaining [Defendant] Thompson, including its failures to adequately and appropriately investigate complaints about Thompson['s] abusive and sexually inappropriate past conduct." Dkt. 41 at 28. According to Plaintiff, these prior complaints did, or should have, put the City on notice that Defendant Thompson posed a risk of harm to others, including her. Dkt. 41 at 28-30.

Plaintiff has retained a Police Procedures expert (Plaintiff's Police expert) who believes that "had TPD supervisors properly investigated and ultimately supervised [Defendant] Thompson, he would never have been approved for continued extra duty work and the sexual battery of [Plaintiff] would not have occurred." Dkt. 41 at 26; Dkt. 43 at 257-258. This

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12

1  conclusion is based on her review of the Eatonville prom investigation and the first (2017) time
2  Plaintiff complained about Defendant Thompson, regarding comments he made to other people.
3  *Id*.

4      The City denies that it failed to properly supervise Defendant Thompson, and argues that
5  Plaintiff's Police expert's opinion is purely speculative and not based on evidence because there
6  is no evidence that Defendant Thompson actually engaged in any type of misconduct during the
7  Eatonville prom. Dkt. 45 at 15-16. Furthermore, according to the City, even if that investigation
8  had substantiated the allegations of leering down girls' dresses while taking selfies with them,
9  and making sexually suggestive comments, the City still would not have been on notice that
10 Defendant Thompson posed a risk of inappropriately touching or sexually assaulting someone.
11 *Id*. The same goes for Plaintiff's first complaint against Defendant Thompson, in which she did
12 not complain about any of Defendant Thompson's behavior toward her, and only complained of
13 comments he made to others. Dkt. 34 at 58-62.

14     This Court concurs with the City that no material question of fact exists regarding
15 whether Plaintiff can prove the City negligently supervised Defendant Thompson because the
16 City's duty to supervise him was limited to "'prevent[ing] the tasks, premises, or
17 instrumentalities entrusted to the employee from endangering others.'" *Betty Y. v. Al-Hellou*, 98
18 Wn. App.146, 148-49 (1999)(quoting *Niece*, 131 Wn.2d at 48).

19     In *Betty Y*., a convicted child sex offender (sex offender) was hired by a company to
20 rehabilitate vacant apartments. His employer knew he had been convicted of molesting a child.
21 *Id*. at 147-48. While working on the apartments, the sex offender raped a child he had come into
22 contact with in the area. *Id*. at 148. The child's mother sued the employer for negligent
23 supervision, alleging that the employer should have known that the sex offender presented a risk
24

to others because of his prior conviction, and that his employment was the proximate cause of the child's injuries. The Superior Court granted summary judgment in favor of the employer and the Washington Court of Appeals affirmed, finding that the employer's duty was to prevent "the tasks, premises or instrumentalities" entrusted to the employee from harming foreseeable victims, which the child was not. *Id*. at 149

Conversely, on the record before this Court, there was no basis upon which to conclude that the City knew of should have known Defendant Thompson presented a risk of sexually assaulting anyone. *See e.g. Niece*, 131 Wn.2d at 52 ("Washington cases have generally interpreted the knowledge element to require a showing of knowledge of the dangerous tendencies of the particular employee."). Thus, although interacting with people such as Plaintiff was arguably one of the "tasks, premises or instrumentalities" entrusted to Defendant Thompson vis-à-vis the City's approval of his "off duty" assignments, Plaintiff was no more a foreseeable victim than anyone else Defendant Thompson interacted with.

Consequently, no material question of fact exists whether Plaintiff can prove the City negligently supervised Defendant Thompson. She can not. Therefore, Defendants' motion for summary judgment on the negligent supervision claim against the City (Claim 3) should be granted.

### III. Negligent Infliction of Emotional Distress by the City (Claim 6)

Plaintiff's sixth claim for relief alleges the City breached its duty of reasonable care by permitting Defendant Thompson to come into contact with Plaintiff. Dkt. 1-1 at 7.

To recover for negligent infliction of emotional distress, a plaintiff must demonstrate the traditional negligence concepts of duty, breach, causation, and damages. *See Hunsley v. Giard*, 87 Wn.2d 424, 434 (1976). A plaintiff must also prove that her emotional response was

reasonable under the circumstances and corroborated by "objective symptomatology." *Hunsley*, 87 Wn.2d at 436; *see also Hegel v. McMahon*, 136 Wn.2d 122, 135 (1998). In order to satisfy this objective symptomatology requirement, a plaintiff's emotional distress "must be susceptible to medical diagnosis and proved through medical evidence," which requires objective evidence about the severity of the distress and the causal link between the event causing the plaintiff's distress and his subsequent emotional reaction. *Id.* at 135.

Turning first to the elements of duty and breach, though Plaintiff's briefing does not directly address how she intends to prove the City owed her a duty that it breached specific to this claim, in restating her understanding of the City's argument she argues that the City ignored "the duties TPD had but breached by unleashing Thompson, wholly unsupervised, onto [Plaintiff] and others at Fred Meyer." Dkt. 41 at 31. Thus, Plaintiff contends the duty breached by the City is the same duty the City breached by negligently supervising Defendant Thompson. Dkt. 41 at 30.

Since this Court has already determined, *infra*, that the City did not negligently supervise Defendant Thompson, Plaintiff's negligent infliction of emotional distress claim also fails. Accordingly, it is unnecessary for this Court to discuss the other elements of this claim. Defendants' motion for summary judgment on Plaintiff's claim of Negligent Infliction of Emotional Distress (Claim 6) should be granted.

### IV.   Respondeat Superior (Claim 7)

Plaintiff's seventh claim for relief alleges that the City is responsible for Defendant Thompson's injurious acts "under the theory of respondeat superior." Dkt. 1-1 at 7.

According to Plaintiff, Defendant Thompson was acting within the scope of his employment when he sexually assaulted her because even though he was technically "off-duty"

at the time of the incident he was serving the City's goal of "community visibility." Dkt. 41 at 26. Plaintiff writes:

> The City is correct that generally an employee's intentional sexual misconduct is not within the scope of his or her employment. *Niece v. Elmview Grp. Home*, 131 Wn. 2d 39, 43, 929 P.2d 420, 423 (1997); *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 30, 380 P.3d 553, 555 (2016). However, here, in this case, Thompson's behaviors, including inappropriately touching Plaintiff's breasts, was done in furtherance of the TPD's community outreach goals.

Dkt. 41 at 27.

The City counters that this argument stretches "credulity beyond the breaking point" because sexually assaulting someone is not part of any department goal. Dkt. 45 at 14. The City points to the case of *Thompson v. Everett Clinic*, 71 Wn. App. 548, 550-53 (1993), in which a staff doctor manually stimulated male patients to the point of ejaculation under the guise of prostrate examination. The doctor later admitted that this behavior was unrelated to any medical need and he did it for his own gratification. *Id*. The Court of Appeals affirmed, finding: "a tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the principal if it emanated from a wholly personal motive of the agent and was done to gratify solely personal objectives or desires of the agent." *Id*. at 553.

"The doctrine of respondeat superior generally provides that an employer is liable for the acts of its employee committed within the scope of his or her employment. When an employee's intentionally tortious or criminal acts are not in furtherance of the employer's business, the employer is not liable as a matter of law, even if the employment situation provided the opportunity or means for the employee's wrongful acts." *Niece v. Elmview Grp. Home*, 79 Wn. App. 660, 664 (1995) (internal citations omitted), *aff'd*, 131 Wn.2d 39 (1997).

This Court concurs with the City that no material question of fact exists whether Defendant Thompson was furthering the City's goal of "community visibility" at the time of the

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 16

1 incident. While his "off duty" employment may have provided the opportunity for Defendant
2 Thompson's wrongful acts, he was not acting within the course of his employment during the
3 incident, but was, like the doctor in the Everett Clinic case, pursuing his own personal
4 gratification.

5 Accordingly, this Court finds no material question of fact whether the City is vicariously
6 liable for Defendant Thompson's conduct, and therefore Defendants' motion for summary
7 judgment on this respondeat superior claim (Claim 7) should be granted.

8 **V.   Causation**

9 The Court now turns to Plaintiff's Motion for Partial Summary Judgment (Dkt. 31). Since
10 the City is dismissed from this case, Plaintiff's Motion for Partial Summary Judgment against the
11 City regarding the question of causation is moot and will not be addressed further.

12 **VI.   Failure to Mitigate**

13 Next, Plaintiff seeks an order finding no material question remains whether she failed to
14 mitigate her damages. Since this Court is recommending granting the motion for summary
15 judgment in favor of the City as to all of Plaintiff's claims against this City, this motion is moot
16 as it relates to the City.

17 Further, since the only claims remaining against Defendant Thompson are Assault &
18 Battery (Claim 4) and Intentional Infliction of Emotional Distress (Claim 5), this Court's review
19 of Plaintiff's motion will be limited to whether a material question of fact exists that Plaintiff
20 failed to mitigate her damages alleged in claims four and five against Defendant Thompson.

21 According to Plaintiff, Defendants have no evidence that her PTSD diagnosis and
22 associated symptoms have been prolonged or aggravated due to her failure to obtain additional
23 counseling. Dkt. 38 at 3. Nor have Defendants presented any evidence that Plaintiff acted
24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 17

1  unreasonably. *Id*. at 4. Defendants have not designated any direct expert to opine on the matter,
2  and Defendant's designated rebuttal medical expert's report is improper for purposes of a motion
3  for summary judgment. Dkt. 38 at 2-3, 8-9.

4  Defendants argue that they do not need expert testimony to establish that a material
5  question of fact remains whether Plaintiff failed to mitigate because her own expert opined that
6  she needs more therapy, and her failure to attend half of the free sessions paid for by her
7  employer, together with her testimony that she did not look for sliding scale/reduced cost
8  therapy, is enough evidence for a reasonable juror to decide that she failed to mitigate her
9  damages. Dkt. 35 at 6-7. This Court disagrees.

10  "The burden of proving failure to mitigate is on the party whose wrongful conduct caused
11  the damage." *Bernsen v. Big Bend Elec. Co-op., Inc*., 68 Wn. App. 427, 435 (1993). Under
12  Washington law, "[a] defendant requesting a failure to mitigate instruction must show that there
13  were alternative treatment options available to the plaintiff and that the plaintiff acted
14  unreasonably in deciding on treatment." *Fox v. Evans*, 127 Wn. App. 300, 304-05 (2005).
15  This must be done by way of expert testimony, though the expert need not be a medical doctor.
16  *Id*. at 307; *see also Cox v. Keg Restaurants U.S., Inc*., 86 Wn. App. 239, 244 (1997). "The
17  supporting facts for a theory and instruction must rise above speculation and conjecture." *Board*
18  *of Regents of UW v. Frederick & Nelson*, 90 Wash. 2d 82, 86 (1978). The issue should not be
19  submitted if the evidence shows that a proposed treatment might not be successful or if there is
20  conflicting testimony as to the probability of a cure, because it is not unreasonable for a plaintiff
21  to refuse treatment that offers only a possibility of relief. *See generally*, 22 Am. Jur. 2d Damages
22  § 540 at 620–21 (1988).

23
24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 18

This Court finds that Plaintiff is correct that Defendant has no admissible expert evidence[7] that she has failed to mitigate her damages, therefore Defendant cannot show to a reasonable degree of medical certainty that Plaintiff's failure to seek more than minimal treatment prolonged or aggravated her PTSD. *See e.g. Cox,* 86 Wn. App. at 244-46 (finding in part that the trial court erred in submitting the issue of failure to mitigate damages to the jury when the evidence of failure to mitigate damages did not show, to a reasonable degree of medical certainty, that claimant's actions or inaction prolonged his recovery/aggravated his injuries). Thus, no material question of fact remains on the issue of mitigation of damages, and Plaintiff's motion for summary judgment on this issue should be granted.

## CONCLUSION

The Court recommends the following disposition of the pending motions:

- Defendant's Motion for Summary Judgment (Dkt. 33) should be GRANTED, and the City of Tacoma should be dismissed from this case[8].

- All John Doe Defendants should be DISMISSED from this case.

- Plaintiff's Motion for Partial Summary Judgment (Dkt. 31) should be DENIED as moot as to the City of Tacoma, and GRANTED as to Defendant Thompson.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

---

[7] Since Plaintiff's own medical expert does not opine on failure to mitigate, Defendant's rebuttal medical expert is not admissible. FRCP 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *Grove City Veterinary Serv., LLC v. Charter Practices, Int'l LLC*, 3:13-CV-2276-AC, 2016 WL 1573830, at *15 (D. Or. Apr. 19, 2016).

[8] To be clear, Defendant Thompson remains a party to this case, as Plaintiff's claims of Assault & Battery (Claim 4) and Intentional Infliction of Emotional Distress (Claim 5) alleged only against Defendant Thompson were not addressed herein.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 19

6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 25, 2021 as noted in the caption.

Dated this 10th day of June, 2021.

David W. Christel
United States Magistrate Judge